### DYCKMAN *vs.* THE MAYOR, &c. OF THE CITY OF NEW-YORK.

Under the 12th section of the act of May 2d, 1834, " to provide for supplying the city of New-York with pure and wholesome water," which authorizes the water commissioners to enter upon land and agree with the owner of any property which may be required, as to the amount of compensation to be paid to him, and which provides that in case of disagreement the vice chancellor may, upon the application of either party, appoint three persons to appraise the value of the property, or the amount of damages, it is not necessary that there should be a formal offer of compensation upon the one side, and a refusal upon the other, before an application can be made for the appointment of appraisers.

All that a reasonable construction of the act requires is, that the parties should have failed to come to an amicable arrangement; or, in other words, that there should be a difference of opinion as to the compensation which one party would be willing to give, and the other party to receive.

What is a sufficient notice of the application for the appointment of appraisers.

An appearance of the owner, by his counsel, before the vice chancellor, to oppose the confirmation of the report of the appraisers, without raising the objection of a want of notice of the application for the appointment of appraisers, or of an insufficient notice, will be considered a waiver of the objection.

Where property required by the water commissioners is owned by several persons as tenants in common, it is not necessary there should be a separate appraisement of the value of the undivided interest of each of the co-tenants. It is sufficient in such a case, to appraise the value of the whole property together.

A tender of the compensation ascertained by the appraisers, to one of several owners of the land taken, who has acted in behalf of the others throughout the proceedings, and who has been authorized by his co-tenants to refuse it, or whose acts are subsequently ratified by them, is a valid tender to all the owners.

THIS was an action of ejectment for land in Westchester county, taken by the Croton Water Commissioners in the con-

struction of their aqueduct.   The cause was tried at the West-
chester circuit in October, 1846, before Barculo, circuit judge.
On the trial the following facts were admitted by the counsel
for the defendants, viz.: That William N. Dyckman, formerly
of Greenburgh in the county of Westchester, now deceased, the
father of the plaintiff, was at the time of making and publishing
his last will and testament, and at the time of his death, seised
and possessed of a farm of land in Greenburgh aforesaid, of
which the premises described in the declaration in this cause
were part and parcel.   That the said William N. Dyckman, at
his death, left him surviving a widow and six children, of whom
the plaintiff was one, the names of which six children are Cath-
alina B., Sampson, Jonathan O., Maria, William W., the plain-
tiff, and Rebecca.   That since the death of the said William N.
Dyckman, his said widow and children had continued in the
occupation of the said farm, including the premises described in
the declaration, until some time during the year 1838, when the
defendants took possession of the said premises; and that the
defendants had continued and were then in the possession of
the premises described in the declaration, and claimed the ex-
clusive possession thereof.   And thereupon the counsel for the
plaintiff produced and gave in evidence the last will and testa-
ment of the above named William N. Dyckman, deceased, bear-
ing date on the 2d day of February, 1820, which was duly
proved as a will of real estate, before the surrogate of the county
of Westchester, on the 12th day of April, 1834, in and by which
said last will and testament the testator devised all his real estate
to his said widow and children in equal proportions, share and
share alike.   The plaintiff here rested his case.   And thereupon
the counsel for the defendants offered to produce and read a
copy of a petition to the vice chancellor of the first circuit, from
the water commissioners of the city of New-York, appointed
under the act entitled "an act to provide for supplying the city
of New-York with pure and wholesome water," and a notice of
presenting such petition; but to the introduction of the said
papers, the plaintiff, by his counsel, objected, and insisted that
such papers could not be read unless the defendants first showed

an attempt by the water commissioners *to agree with the plaintiff as the owner of the land*, as to the amount of compensation to be paid for the land which might be required by the water commissioners under the act above mentioned. The judge thereupon directed that the said petition and all the papers produced on the part of the defendants should be read, subject to any objections on the part of the plaintiff. And thereupon the counsel for the defendants produced and read the petition and notice above mentioned. The petition recited the passage of the "Act to provide for supplying the city of New-York with pure and wholesome water," passed May 2d, 1834; that the petitioners entered upon their duties as water commissioners, and previous to the 1st of January, 1836, made a report to the common council of their proceedings and the plan adopted by them; which plan was approved by the common council; and such further proceedings were had that the common council instructed the commissioners to proceed in the work. The petition also stated that the petitioners had caused surveys to be made of the several pieces of land, &c. required for the construction of the work, and to be filed with the clerk of Westchester county. That for the construction of the said work they required that the corporation of New-York should become seised in fee of certain lands therein specified, among which was the *locus in quo*. That the petitioners had offered to purchase the said piece of land, of the owners thereof, but had not been able to agree with either of them as to the price. They therefore prayed for the appointment of three indifferent persons to examine said land and estimate the value thereof, and to report thereon; and that upon the confirming of their report an order or decree might be made, directing that upon the payment of the sums mentioned in the report of such appraisers, within two months thereafter, to the owners, or to such person or persons as the court might direct, the title to said property should become vested in the corporation of New-York. There was a notice annexed to the petition stating that the petition would be presented to the vice chancellor on the 12th of Sept. 1837; with an affidavit of service of the petition and notice personally upon Mrs. Dyckman and

Dyckman v. The Mayor, &c. of New-York.

three of her children on the 6th of Sept. 1837, and of service upon Maria Dyckman, William W. Dyckman (the plaintiff) and J. O. Dyckman *by delivering the same to their mother*, at her residence, on the same day.

The defendants also gave in evidence an order made by the vice chancellor, on the 13th of Sept. 1837, according to the prayer of the petition. This order was made ex parte. The defendants also gave in evidence the report of the appraisers, in which they estimated and valued the premises in question at $3000; also an order made upon the motion to confirm that report, by which the motion was denied, and it was referred back to the appraisers to receive further testimony, to review and re-examine their report, and to make a further report. The second report of the appraisers was also produced and read, by which the appraisers adhered to their former report, and valued the premises in question at $3000. Also an order made on the 21st of May, 1838, confirming the second report of the appraisers. Upon both of these motions Mr. W. N. Dyckman appeared as counsel for the plaintiff in this suit and the other owners of the premises, and opposed the granting of the orders. The defendants examined Philip S. Crooke, as a witness, who testified that he was attorney for the water commissioners, and solicitor in the proceedings in chancery. That on the 23d of May, 1838, he went to the house upon the premises in question, with $3000 in gold, to tender the same to the owners of the land. That he saw Jonathan O. Dyckman, and some others, but he believed the plaintiff was not present; that they all lived together; that J. O. Dyckman had acted for the family, in appraising the damages; that the witness told him he had brought $3000 in order to pay the family for the appraisement of the land, and showed him the gold; that J. O. Dyckman said, " We will not take it; we have made up our minds not to take the appraisal; we are *going* to fight it out." That the witness made the tender to J. O. Dyckman because he had acted for the family; that he was present through all the proceedings in the appraisement and hearings before the appraisers; that the plaintiff attended some of the meetings when Jonathan was present. The witness also

Dyckman *v.* The Mayor, &c. of New-York.

testified in his cross-examination, that he made a written application to the vice chancellor of the first circuit for leave to pay into court the amount of the appraisement. That it was opposed on behalf of the owners, by their counsel, on the ground that the order confirming the second report of the appraisers had been appealed from. That the application was refused by the vice chancellor. That he had no doubt the application was made within sixty days from the making of the order confirming the report of the appraisers. That he did not know that the money had ever been paid to any person designated by the vice chancellor. The defendants here rested. The counsel for the plaintiff called *Charles Dusenbury* as a witness, who testified that he, the witness, was one of the water commissioners of the city of New-York. And thereupon the counsel for the plaintiff offered to prove by this witness that no attempt had been made to agree with the plaintiff as to the amount of compensation to be paid to him for the property described in the declaration in this cause. The counsel for the defendants objected that such testimony was irrelevant and not pertinent to the issue then to be tried. The circuit judge decided that such objection was well taken, and that the testimony so offered on the part of the plaintiff should not be received; to which decision the plaintiff's counsel excepted. The plaintiff's counsel called as a witness *Jonathan O. Dyckman,* one of the devisees of William N. Dyckman, deceased, and tenant in common with the plaintiff in the land claimed in this suit. The defendants objected to this witness as incompetent, on the ground that he was interested to establish the title of the plaintiff in this suit, and to ensure him a recovery. The objection was overruled by the circuit judge, who decided that the witness was competent. And thereupon the said Jonathan O. Dyckman testified that he had no authority to act for the plaintiff in this business; that the plaintiff always told the witness that he would act for himself; that the witness knew how much had been awarded; that he had made up his mind not to take it; and that if the said Philip S. Crooke had counted down $3000 for the family, he would not have taken it. That Sampson Dyckman, (the brother of the witness

Dyckman *v.* The Mayor, &c. of New-York.

and of the plaintiff,) employed William N. Dyckman of the city of New-York, to act for the family, that he, the witness, agreed to it.   The witness being asked if the members of the family had agreed that William N. Dyckman should go on, answered, yes.   That he knew the family were dissatisfied with the award of $3000.   He knew that the plaintiff was dissatisfied.

The counsel for the plaintiff objected, and insisted that the documentary evidence produced on the part of the defendants was insufficient and ought not to be received.   1. Because the proceedings against the owner were joint, instead of being several.   2. Because the defendants had shown no attempt to agree with the owners.   3. Because no personal notice had been given to the plaintiff, of the application for the appointment of apprais- ers.   4. Because there was no proof of any decision on the ap- peal.   5. Because the defendants could not become seised of the premises in question, except upon payment of the appraisement. 6. Because no tender was made to the plaintiff.   7. Because Jonathan O. Dyckman, to whom the tender was made, had no authority to act for the plaintiff.   The circuit judge overruled the objections of the plaintiff's counsel; and decided that such documentary evidence should be read; to which opinion and decision of the judge the plaintiff excepted.   The counsel for the defendants then moved for a nonsuit; which motion was granted, and the plaintiff excepted.   And the plaintiff, upon a bill of exceptions, moved for a new trial.

*W. N. Dyckman*, for the plaintiff.

*H. E. Davies*, for the defendants.

*By the Court*, EDWARDS, J.   The first ground of objection which was taken by the plaintiff to the documentary evidence introduced by the defendants was, that they had shown no at- tempt to agree with the owners of the property in question, as to the amount of compensation, before application was made for the appointment of appraisers.

The act of 1834 (*Laws* 1834, *p.* 453, § 12,) authorized the

water commissioners to enter upon land, and agree with the owner of any property which might be required, as to the amount of compensation to be paid to him. And it provided, in case of disagreement, that the vice chancellor might, upon the application of either party, nominate and appoint three indifferent persons to examine such property, and to estimate the value thereof, or damages sustained thereby, and to report to the court without delay ; and that upon the confirmation of the report by the vice chancellor, the commissioners should within two months thereafter pay to the owner, or such person or persons as the court might direct, the sum mentioned in the report, and that thereupon the mayor, &c. of the city of New-York should become seised of the property.

It will be observed that this act delegated to the defendants the exercise of the right of eminent domain, for the purpose of constructing a work of great public benefit and utility. But, inasmuch as the right could not be so exercised consistently with the provisions of the constitution, unless just compensation should be made for all property taken, the act contained a provision directing in what manner such compensation should be ascertained ; and as there might be many cases in which the water commissioners could, if proper facilities were afforded to them, come to an agreement with the owners of the property as to what should constitute a just compensation, without the necessity of having a formal examination and appraisement, a provision was made by which they were authorized to enter upon the property required, for the purpose of making surveys, and agreeing with the owner thereof as to the amount of compensation. This provision was not intended for the purpose of protecting any right of the owner of the property required, nor for the purpose of conferring any benefit upon him ; and it is not contained in most of the acts in which corporations have been authorized to exercise the right of eminent domain. The object of the legislature was to afford every facility for an amicable arrangement between the water commissioners and the owners of property. The act then provided that in case of dis-

Dyckman v. The Mayor, &c. of New-York.

agreement, three indifferent persons might be appointed to examine the property, and estimate its value.

The construction which is given by the counsel for the plaintiff to this last provision is, that before application can be made for the appointment of appraisers there must be a formal offer of compensation upon the one side, and a refusal upon the other—that there must be an issue formed between the parties. We do not think that such a construction is necessary for the protection of the rights of the owners of property, nor that such is the spirit and meaning of the statute. All that any reasonable construction of the act can require is, that the parties should have failed to come to an amicable arrangement; or, in other words, that there should be a difference of opinion as to the compensation which one party would be willing to give, and the other party to receive. That such a state of facts existed in this case, it would seem, could hardly be denied after reading the bill of exceptions. It there appears that the owners of the property attended before the appraisers; that they objected to the confirmation of the appraisers' report; that there was a second examination of the property; that the confirmation of the second report was objected to; that after it was confirmed it was appealed from; and that, finally, when the amount of compensation had been fixed the owners of the property not only refused to receive it, but objected to its payment into court. If there had been no disagreement how is it possible that the parties could have been in a continued state of opposition from the commencement of the proceedings before the vice chancellor to this day?

But it is contended that no notice of the application for the appointment of appraisers was given to the plaintiff.

The statute does not, in terms, require any notice to be given. The practice, however, was to give notice, and I shall assume that a correct interpretation of the statute required it. But no provision is made as to what should constitute a sufficient notice. It appears from the bill of exceptions that the notice to the plaintiff was served upon his mother, who was one of the tenants in common, at her residence on the premises, and it also

appears that the plaintiff, and all the other owners of the property, resided with her. There is no general rule of law which requires that the service of notice shall in all cases be personal. Notice may, in some instances, be given by publication; in other cases it may be sent through the mail; and in others, it may be served by being left at the residence of the party, or at his place of business. The latter is considered sufficient notice under the law merchant, in many transactions of high importance. And, in a case like the one before us, there is no reason why it should not be considered, at least, as prima facie sufficient. But, even if it were insufficient, the plaintiff has waived all objection to the regularity of the proceedings on that ground. An appearance without objection will always cure a defect arising from a want of, or from an insufficient notice. The bill of exceptions shows that all the members of the family employed William N. Dyckman to act for them as counsel. It also shows that the counsel thus employed appeared before the vice chancellor in opposition to the first report made by the appraisers; that he appeared before the appraisers on the second examination of the property; that he appeared in opposition to the confirmation of the second report, and that he never made any objection to the proceedings either on the ground of a want of notice, or that there was not a case of disagreement within the provisions of the act.

The next objection taken to the regularity of the defendants' proceedings is, that there should have been a separate appraisement of the value of the interest of each of the co-tenants.

The act speaks of the "*owner* of any property which may be required." The word *owner*, according to every reasonable construction of the statute, means the person or persons who represent a particular piece of property, where there is a *unity of possession*. Although the separate tenants in common have separate and distinct interests, still, as it is expressed, "none knoweth his own severalty;" and it is not the province of the appraisers to make partition of, and adjust the interests of the different tenants, which they would be required to do, if they appraised the interest of each tenant severally. The extent of

the duties of the appraisers, under the statute, is to estimate the value of property required.

The final objection which was taken is, that the compensation which was ascertained by the appraisers, was not paid within two months after the confirmation of their report.

It is not pretended, on the part of the defendants, that an actual payment was made, but they contend that they made a valid legal tender. If such a tender was made, it was undoubtedly a sufficient compliance with the statute.

The testimony of the attorney for the water commissioners shows that he went to the residence of the plaintiff, and that he made a tender in gold of the amount awarded by the appraisers, to one of the members of the family; that the person to whom the tender was made had acted for the family throughout the proceedings; that when the tender was made to him, he was told that it was made for the benefit of the family; and that he said "*we will not receive it.*"

There is no doubt that the tender was regular in form; and we think that the evidence satisfactorily shows that the person to whom it was made was authorized by all his co-tenants to refuse it. But, if there were any doubt whether such an authority had been previously granted, the bill of exceptions shows that his acts were subsequently acknowledged and ratified; for it appears from the testimony which was introduced by the plaintiff, upon the cross-examination of one of the defendants' witnesses, that when the attorney for the water commissioners applied to the vice chancellor for leave to pay the money into court, the counsel who represented all the owners, including the plaintiff, opposed it, and that owing to such opposition the application was denied. The defendants then did every thing in their power for the purpose of making payment. If they failed in doing so, it was through the fault of the plaintiff alone, and he can have no just cause of complaint.

The motion for a new trial must be denied with costs.